UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

2020 SEP 30 P 4: 27

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:20-cr- |
| v. | ) | |
| | ) | Wire Fraud |
| JOHN L. ALLEN, | ) | (18 U.S.C. § 1343) |
| | ) | (Count 1) |
| | ) | |
| Defendant. | ) | Money Laundering |
| | ) | (18 U.S.C. § 1957) |
| | ) | (Count 2) |
| | ) | |
| | ) | Notice of Forfeiture |
| | ) | (18 U.S.C. §§ 981(a)(1)(C) |
| | ) | & 982(a) & 28 U.S.C. § 2461(c)) |
| | ) | |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### COUNT ONE

[18 U.S.C. § 1343 – Wire Fraud]

#### Introduction

At all times relevant to Count One of this Information:

1. JOHN L. ALLEN was an attorney who practiced law in New Hampshire, Massachusetts, and Illinois from 1985 through in or around October 2019.

2. In 2009, ALLEN partnered with another attorney to form the law firm of Allen-Fuller PA in Manchester, New Hampshire. In or about 2015, ALLEN's partner left the firm. From that point on, Allen-Fuller PA consisted of ALLEN and his legal assistant.

1

3. In his law practice, ALLEN provided legal services related to, among other things, debt restructuring, commercial real estate acquisition and development, and secured lending transactions.

4. NBT Bank was a financial institution that affected interstate commerce. Any wire transfer of funds to, from, or between NBT accounts were sent through servers in the State of New York. Checks deposited at NBT branches were scanned and wired through servers in the states of Georgia and California.

5. ALLEN maintained and controlled several bank accounts at NBT Bank. The accounts included two trust accounts, specifically Interest on Lawyer Trust Accounts ("IOLTA"), and a business account.

6. An IOLTA is an interest bearing account into which an attorney can deposit client funds to be held in trust for future use. Each state regulates their own IOLTA program. As an attorney licensed to practice in New Hampshire and who handled clients' funds, ALLEN was required to create or maintain an IOLTA account and to comply with recordkeeping requirements and other safeguards to protect client funds in the account.

7. ALLEN controlled two IOLTAs: one in the name of "Allen-Fuller PA, New Hampshire Bar Association – IOLTA" with an account number ending in 0196 (the "Allen-Fuller IOLTA"), and another in the name of "John L. Allen PC, New Hampshire Bar Foundation – IOLTA" with an account number ending in 4834 (the "John Allen IOLTA").

8. ALLEN also controlled a bank account at NBT Bank in the name of "John L. Allen PC" with an account number ending in 0506 (the "-0506 Account"). ALLEN opened the -0506 Account as a business account, but he used the account to pay both business and personal

expenses. For example, ALLEN used the -0506 Account to fund vacations (including travel, hotels and resorts), pay residential rent and utilities, pay personal credit cards, and make personal loan payments.

9.  Client 1, Client 2, Client 4, Client 4, and Client 5 (the "client victims") were clients of ALLEN. They hired ALLEN to provide legal services and to hold money in ALLEN's IOLTA for specific purposes related to the services ALLEN was to perform.

### The Scheme

10.  Beginning at an unknown date but at least from in or about January 2014 through in or about October 2019, ALLEN knowingly and willfully devised and intended to devise a scheme to defraud the client victims, and to obtain money and property from the client victims by means of materially false and fraudulent pretenses, representations, and promises.

11.  Between in or about January 2014 through in or about October 2019, the client victims gave ALLEN more than $2.4 million to be held in escrow for specific purposes, including private lending, real estate transactions, and other specific business deals. ALLEN then transferred those funds between his IOLTAs and, without authority to do so, into another bank account he controlled and spent the funds on his own personal and unrelated business expenses. All the while, he misled the client victims by representing that the funds were safely held in one of his IOLTAs or being used as his clients intended.

12.  For example, ALLEN caused Client 1 to invest more than $1.5 million in fraudulent promissory notes. ALLEN told Client 1 that his money would be deposited into an escrow account and disbursed with Client 1's approval. In reality, ALLEN created the fake promissory notes using other persons' real identities and spent Client 1's money on his own

3

personal and unrelated business expenses.

13. Likewise, the other client victims gave ALLEN money to be held in escrow to be used specific real estate and other business transactions. ALLEN did not use the money for those transactions. Instead, he kept their money and spent it on personal and unrelated business expenses

14. In furtherance of the scheme and for the purpose of executing the scheme, ALLEN sent the victim clients emails and caused their funds to be wired between his various accounts.

15. To hide the sources of the funds he stole from his clients and used for unauthorized purposes, ALLEN comingled fraud proceeds and legitimate funds, made many transfers back and forth between accounts, and spent the funds in those accounts on unrelated business and personal expenses.

<u>Wire in Furtherance of the Scheme</u>

16. On or about January 13, 2019, in the District of New Hampshire and elsewhere, the defendant,

JOHN L. ALLEN,

for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce writings, signs, and signals, namely, an email message from ALLEN in New Hampshire to Client 1 in Florida, falsely listing the outstanding balances of the fraudulent promissory notes and soliciting Client 1 to invest in additional fraudulent loans.

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWO

[18 U.S.C. § 1957 – Money Laundering]

17. The United States Attorney re-alleges paragraphs 1 through 15.

18. On or about July 29, 2019, in the District of New Hampshire and elsewhere, the defendant,

## JOHN L. ALLEN,

did knowingly engage in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, namely, the wire fraud scheme alleged in Count One of this Information, in that the defendant caused $11,921.31 in criminally derived funds to be wired from the -0506 Account at NTB Bank to the Mandarin Oriental hotel, a luxury hotel in Miami, Florida.

All in violation of Title 18, United States Code, Sections 1957.

NOTICE OF CRIMINAL FORFEITURE PURSUANT TO
18 U.S.C. § 981(A)(1)(c), 28 U.S.C. § 2461(c), AND 18 U.S.C. § 982(a)(1)

The allegations of Count One and Two of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1). Upon conviction of the offense set forth in Count One of this Indictment, the defendant, JOHN L. ALLEN, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

(All in accordance to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(1), and Rule 32.2(a), Federal Rules of Criminal Procedure.)

Date: September 29, 2020

SCOTT W. MURRAY
United States Attorney

Matthew T. Hunter
Assistant United States Attorney