UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

2020 SEP 30  P 4: 27

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:20-cr- |
| | ) | |
| JOHN L. ALLEN | ) | |
| | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United

States of America by its attorney, Scott W. Murray, United States Attorney for the District of

New Hampshire, and the pro se defendant, John L. Allen, Esq., enter into the following Plea

Agreement:

1.  The Plea and The Offense.

The defendant agrees to waive his right to have this matter presented to a grand jury and

plead guilty to an Information charging him with wire fraud, in violation of 18 U.S.C. § 1343,

and money laundering, in violation of 18 U.S.C. § 1957.

In exchange for the defendant's guilty plea, the United States agrees to the sentencing

stipulations identified in Section 6 of this agreement.

2.  The Statute and Elements of the Offense.

Title 18, United States Code, Section 1343 provides, in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud,
or for obtaining money or property by means of false or fraudulent pretenses,
representations, or promises, transmits or causes to be transmitted by means of
wire, radio, or television communication in interstate or foreign commerce, any
writings, signs, signals, pictures, or sounds for the purpose of executing such
scheme or artifice, shall be fined under this title or imprisoned not more than 20
years, or both.

- 1 -

18 U.S.C. § 1343.

The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

> First,     that there was a scheme, substantially as charged in the Information, to defraud or to obtain money or property by means of false or fraudulent pretenses;

> Second,     that the scheme to defraud involved the misrepresentation or concealment of a material fact or matter or the scheme to obtain money or property by means of false or fraudulent pretenses involved a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter;

> Third,     that the defendant knowingly and willfully participated in this scheme with the intent to defraud; and

> Fourth,     that for the purpose of executing the scheme or in furtherance of the scheme, the defendant caused an interstate wire communication to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, an interstate wire communication would be used, on or about the date alleged.

Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2018 Revisions, Instruction 4.18.1343, https://www.med.uscourts.gov/pdf/crpjilinks.pdf; Pattern Criminal Jury Instructions Of The Seventh Circuit, at 402, Instruction for 18 U.S.C. § 1343 (Concealing A Material Fact), http://www.ca7.uscourts.gov/pattern-jury-instructions/7th_criminal_jury_instr.pdf.

Title 18, United States Code, Section 1957 provides, in pertinent part:

Whoever, in any of the circumstances set forth in subsection (d) [including that the offense "takes place in the United States"], knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished . . . .

18 U.S.C. § 1957.

The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

> First,     that the defendant deposited; withdrew; or exchanged funds over $10,000

in a financial institution affecting interstate commerce on the date specified in the Information;

Second,        he knew that the money; deposit; or exchange came from some kind of criminal offense;

Third,        the money; deposit; or exchange was in fact criminally derived from specified unlawful activity—namely, the wire fraud scheme alleged in the Information; and

Fourth,        the specified unlawful activity took place in the United States.

Criminal Jury Instructions For The District Courts Of The First Circuit § 4.18.1957, updated June 24, 2019, available at https://www.med.uscourts.gov/pdf/crpjilinks.pdf.

    3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offense beyond a reasonable doubt:

The defendant, John L. Allen, is an attorney who practiced law in New Hampshire, Massachusetts, and Illinois from 1985 through October 2019.   In 2009, Allen partnered with another attorney to form Allen-Fuller PA.   In 2015, Allen's partner left the firm.   From that point on, Allen-Fuller PA consisted of Allen and his legal assistant.   In his law practice, Allen provided legal services related to, among other things, debt restructuring, commercial real estate acquisition and development, and secured lending transactions.

NBT Bank is a financial institution that affects interstate commerce.   Any wire transfer of funds to, from, or between NBT accounts are wired through servers in New York.   Checks deposited at NBT bank branches are scanned and wired through servers in Georgia and California.   Allen maintained and controlled several bank accounts at NBT Bank.   The accounts included two trust accounts, specifically Interest on Lawyer Trust Accounts ("IOLTA") and a

business account.   An IOLTA is an interest bearing account, regulated by the state, into which an attorney can deposit client funds to be held in trust for future use.

Allen controlled two IOLTAs:   one in the name of "Allen-Fuller PA, New Hampshire Bar Association – IOLTA" with an account number ending in 0196 (the "Allen-Fuller IOLTA"), and another in the name of "John L. Allen PC, New Hampshire Bar Foundation – IOLTA" with an account number ending in 4834 (the "John Allen IOLTA").   Allen also controlled a bank account in the name of "John L. Allen PC" with an account number ending in 0506 (the "-0506 Account").   Allen used the -0506 Account to pay both business and personal expenses.   For example, Allen used the -0506 Account to fund vacations (including travel, hotels and resorts), pay residential rent and utilities, pay personal credit cards, and make personal loan payments.

Beginning at an unknown date but at least from January 2014 through October 2019, Allen knowingly and willfully devised and intended to devise a scheme to defraud his clients, including Client 1, Client 2, Client 3, Client 4, and Client 5 (the "client victims"), and to obtain money and property from the client victims by means of materially false and fraudulent pretenses, representations, and promises.

From January 2014 through October 2019 the client victims gave Allen more than $2.4 million to be held in escrow in one of his IOLTAs for a specific purpose, including private lending, real estate transactions, and particular business deals.   Allen then transferred those funds between his IOLTAs and into other bank accounts he controlled and spent the funds on his own personal and unrelated business expenses.   All the while, he misled the client victims by representing that the funds were safely held in one of his IOLTAs or being used as the client victims intended.

- 4 -

For example, in January 2014, Client 1 received approximately $1.4 million from a civil lawsuit.   Allen represented him in that civil case.   Client 1 planned to use that money to retire by investing the bulk of those funds in commercial lending to generate ongoing returns.   Allen claimed to have had a list of clients that would be interested in borrowing the money and Client 1 hired Allen to handle the legal paperwork related to the loans.   Allen told Client 1 that he would deposit Client 1's money into an escrow account and disburse it with Client 1's approval as loans to other Allen clients.   Between January and April of 2014, Client 1 gave Allen three checks, totaling about $1,024,000, to be the principal for the loans.   Allen deposited those checks into the Allen-Fuller IOLTA.

Initially, Allen invested the money in legitimate promissory notes and provided the interest to Client 1, while Allen retained the principal.   But, eventually Allen began creating fake promissory notes and convinced Client 1 to reinvest the funds in the fake notes as the legitimate notes matured.   Allen created the fake promissory notes using other persons' real identities and signed the notes pretending to be those other people.   Allen also convinced Client 1 to reinvest some of the interest from the legitimate notes as principal in future fraudulent notes that Allen created.   For example, on January 13, 2019, Allen sent an email from his office in Manchester, New Hampshire, to Client 1 in Florida in which Allen falsely listed the outstanding balances of the fraudulent promissory notes and solicited Client 1 to invest in additional fraudulent loans.

In total, Client 1 invested $1,567,134 in the fraudulent promissory notes:   the original principal of $1,024,000, and $543,134 in reinvested interest from the earlier legitimate notes. Allen spent all of the $1,567,134 on his own personal and unrelated business expenses.

In January 2018, Client 2 hired Allen to provide legal services related to a closing and to hold funds in escrow that he was using to purchase three properties in Claremont, New Hampshire.    The funds were provided through a third-party lender.    On January 18, 2018, the lender provided Allen $170,000, to be disbursed only at the lender's request.    At the lender's request, Allen disbursed all but approximately $105,000 of those funds.    Allen never disbursed the remaining funds, nor did he return them to the lender or Client 2. Instead, Allen kept the money and spent the money on personal and unrelated business expenses.

In June 2018, Client 2 hired Allen to, among other things, hold funds in escrow that he was using to develop a subdivision in Hooksett, New Hampshire (the "Hooksett subdivision").    The funds were provided through a third-party lender.    Of the funds the lender provided Allen, $525,000 was designated to be used only to construct a road for the Hookset subdivision.    The road was never constructed and Allen did not return the funds to Client 2 or the lender.    Instead, Allen kept the $525,000 and spent the money on personal and unrelated business expenses.

In May 2019, Client 3 funded the purchase of a property in Newport, New Hampshire (the "Newport property").    She hired Allen to, among other things, hold the funds in escrow and disperse them as needed to effect the purchase.    Of the funds Client 3 provided Allen, $15,000 was designated to be used only for improvements to the Newport property.    Allen did not disburse the money for improvements as he should have.    Instead, Allen kept the $15,000 and spent it on personal and unrelated business expenses.

- 6 -

In July 2019, Client 3 funded the purchase of a property in Franklin, New Hampshire (the "Franklin property").   She hired Allen to, among other things, hold the funds in escrow and disperse them as needed to effect the purchase.   Of the funds Client 3 provided Allen, $58,518 was designated to be used only for improvements to the Franklin property.   Allen dispersed $10,000 for improvements but kept the remaining $48,518.   He spent the money on personal and unrelated business expenses.

In August 2019, Client 4 and Client 5 hired Allen to provide legal services related to their purchase of a property in Wolfeboro, New Hampshire (the "Wolfeboro property"). On or about August 19, 2019, Client 4 gave Allen a $100,000 check to be used to purchase the Wolfeboro property.   Later that day, Allen deposited it into the Allen-Fuller IOLTA. The next day, August 20, 2019, Allen transferred the funds to a different account, the John Allen IOLTA.   On August 22, 2019, Client 5 issued a $65,000 check to Allen to be used to purchase the Wolfeboro property.   The check was deposited into the John Allen IOLTA on August 26, 2019.   The $100,000 and $65,000 was not used to purchase the Wolfeboro property.   Allen did not return the money to Client 4 or Client 5.   Instead, Allen kept the money and spent it on unrelated business ventures and personal expenses.

To hide and spend his the funds he stole from his clients, Allen comingled fraud proceeds and legitimate funds, made many transfers back and forth between his accounts, and spent the funds in those accounts on unrelated business and personal expenses. Between January 2014 and October 2019, Allen transferred more than $1.2 million from the John Allen IOLTA to his "business" account, the -0506 Account and transferred more than $75,000 from the Allen-Fuller IOLTA to his "business" account, the -0506 Account.   On

- 7 -

July 29, 2019, Allen caused $11,921.31 in stolen client funds he had wired to the -0506

Account at NTB Bank to be wired to the Mandarin Oriental hotel, a luxury hotel located on a

private island in Miami, Florida.

All told, through this scheme Allen stole at least $2,426,258.15 from the client

victims.

4. Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A.   For Count One, a maximum prison term of 20 years (18 U.S.C. § 1343) and, for
     Count Two, a maximum prison term of 10 years (18 U.S.C. § 1957(b));

B.   For Count One, a maximum fine of $1,000,000 or not more than the greater of
     twice the gross gain or twice the gross loss, whichever is greater (18 U.S.C. §
     1343; 18 U.S.C. § 3571(b)(1), (d)) and, for Count Two, a maximum fine of
     $250,000 or twice the amount of the criminally derived property involved in the
     transaction, whichever is greater (18 U.S.C. § 1957(b); 18 U.S.C. § 3571(b)(3));

C.   A term of supervised release of not more than 5 years (18 U.S.C. §§ 3559,
     3583). The defendant understands that the defendant's failure to comply
     with any of the conditions of supervised release may result in revocation
     of supervised release, requiring the defendant to serve in prison all or part
     of the term of supervised release, with no credit for time already spent on
     supervised release; and

D.   A mandatory special assessment of $200, $100 for each count of conviction, at or
     before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)).

In addition to the other penalties provided by law, the Court may order the defendant to

pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

To facilitate the collection of financial obligations to be imposed in connection with this

case, the defendant agrees to fully disclose all assets in which he has any interest or over which

the defendant exercises control, directly or indirectly, including those held by a spouse, nominee

or other third party.   Prior to the plea hearing in this case, the defendant agrees to submit a

completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs.   The defendant promises that his financial statement and disclosures will be complete, accurate and truthful.   The defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.

5.   Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.   Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.   Respond to questions from the Court;

C.   Correct any inaccuracies in the pre-sentence report;

D.   Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory

Sentencing Guidelines that the Court will adopt.

    6. Sentencing Stipulations and Agreements.

    Pursuant to Fed. R. Crim. 11(c)(1)(C), the United States and the defendant stipulate and agree to the following:

        (a)    57 months' imprisonment is an appropriate disposition of this case;

        (b)    The defendant agrees that restitution of at least $2,426,258.15 is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

    The parties intend the above stipulations to be "binding" under Fed. R. Crim. P. 11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty pleas.

    The parties are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

    7. Acceptance of Responsibility.

    The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of

responsibility if the defendant:

    A.    Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

    B.    Challenges the United States' offer of proof at any time after the plea is entered;

    C.    Denies involvement in the offense;

    D.    Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

    E.    Fails to give complete and accurate information about his financial status to the Probation Office;

    F.    Obstructs or attempts to obstruct justice, prior to sentencing;

    G.    Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

    H.    Fails to appear in court as required;

    I.    After signing this Plea Agreement, engages in additional criminal conduct; or

    J.    Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States

- 11 -

of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.  Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant also understands that he has the right:

A.  To plead not guilty or to maintain that plea if it has already been made;

B.  To be tried by a jury and, at that trial, to the assistance of counsel;

C.  To confront and cross-examine witnesses;

D.  Not to be compelled to provide testimony that may incriminate him; and

E.  To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9.  Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.     Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.     Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.     Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.     Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.     Is completely satisfied with the representation and advice received from his undersigned attorney.

10.  Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.  Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and

removed from the United States by making him deportable, excludable, or inadmissible. The

defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending

his naturalization, which would likely subject him to immigration proceedings and possible

removal from the United States. The defendant understands that the immigration consequences

of this plea will be imposed in a separate proceeding before the immigration authorities. The

defendant wants and agrees to plead guilty to the charged offense regardless of any immigration

consequences of this plea, even if this plea will cause his removal from the United States. The

defendant understands that he is bound by his guilty plea regardless of any immigration

consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty

plea and to his sentence based on any immigration consequences, and agrees not to seek to

withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his

guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12.  Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal

liability in the District of New Hampshire arising from his participation in the conduct that forms

the basis of the Information in this case. The defendant understands that if, before sentencing, he

violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails

to appear for sentencing, the United States may consider such conduct to be a breach of the Plea

Agreement and may withdraw therefrom.


13.  Forfeiture

The defendant agrees to immediately and voluntarily forfeit to the United States his

- 14 -

interest, if any, in any and all assets subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1) as a result of his guilty plea.

The defendant also agrees to the entry of a criminal forfeiture money judgment, pursuant to Fed. R. Crim. P. 32.2(b)(1), in the amount of no less than $2,426,258.15, and no greater than $3,000,000.00, the exact amount to be determined on or before the date of sentencing.   The money judgment represents a fair estimate of the gross proceeds which the defendant obtained, directly or indirectly, as a result of the offenses to which he is pleading guilty, specifically, 18 U.S.C. § 1343, wire fraud, and 18 U.S.C. § 1957, money laundering.   The defendant agrees the proceeds derived by him from the offense can no longer be located upon the exercise of due diligence by the United States or are otherwise beyond the jurisdiction of this Court so that, pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p), the United States is entitled to forfeit substitute property in which the defendant has an interest up to the amount to be determined by the Court at the time of sentencing.

The defendant agrees to waive his right to have the Court separately determine the forfeiture of substitute property under 21 U.S.C. § 853(p)(2) and Fed. R. Crim. P. 32.2(e).   The defendant further agrees to waive the procedures set forth in Fed. R. Crim. P. 32.2(e)(2), and to waive any defenses to forfeiture of the substitute asset. The defendant agrees to the entry of an order by this Court forfeiting said substitute property.

Any properties of the defendant forfeited as proceeds of the offense, or as substitute assets shall be credited to the money judgment.

The defendant agrees and consents to the forfeiture of his interest in these assets pursuant to any criminal, civil and/or administrative forfeiture action brought to forfeit these assets.

- 15 -

None of the forfeitures set forth in this section shall be deemed to satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon the defendant, nor shall the forfeitures be used to offset the defendant's tax liability or any other debt owed by the defendant to the United States.

The defendant agrees to waive all constitutional, statutory, and any other challenges in any manner, including, without limitation, by direct appeal and/or habeas corpus, to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including the following:    (1) the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the U.S. Constitution; (2) failure to comply with any and all requirements of Fed. R. Crim. P. 11(b)(1)(J) pertaining to the Court's advice at the change of plea hearing; and, (3) failure to comply with any and all requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument and announcement of the forfeiture at sentencing and incorporation of the forfeiture in the judgment.    The defendant further acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case.

The defendant waives and releases any and all claims he may have to any property seized by the United States, or any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, whether forfeited or not.    The defendant agrees to hold the United States, its agents, and employees, and any state or local law enforcement agency participating in the investigation and prosecution of this case, harmless from any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure, detention and return of any property in connection with the investigation and prosecution of this

- 16 -

case.

The defendant acknowledges that the properties to be forfeited under this section are subject to forfeiture as property facilitating or involved in illegal conduct.

14. Waivers.

A. Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1. His guilty plea and any other aspect of his conviction, including, but not limited to, any claim that the Information is multiplicitous or duplicitous , adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; or claims challenging the constitutionality of the statute of conviction; and

2. The sentence imposed by the Court if it is consistent with or lower than the stipulated sentence specified in Section 6 of this agreement.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B. Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.  By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, any claim that the Information is multiplicitous or duplicitous adverse rulings on pretrial suppression

- 17 -

motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.    The sentence imposed by the Court if it is consistent with or lower than the stipulated sentence specified in Section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

15.   No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

- 18 -

16.   Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this

Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by

the United States Attorney for the District of New Hampshire, or an Assistant United States

Attorney.

17.   Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this

Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.

                                        SCOTT W. MURRAY
                                        United States Attorney


Date: September 30, 2020              By: _____
                                        Matthew T. Hunter
                                        Assistant United States Attorney
                                        Bar Association # 682921 (MA)
                                        53 Pleasant St., 4th Floor
                                        Concord, NH 03301
                                        Matthew.Hunter@usdoj.gov



       The pro se defendant, John L. Allen, Esq., certifies that he has read this 19-page Plea
Agreement and that he fully understands and accepts its terms.


Date: _____         _____
                                        John L. Allen, Esq., Pro Se, Defendant


- 19 -

16. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

17.  Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

SCOTT W. MURRAY
United States Attorney

Date: _____       By: _____
                                   Matthew T. Hunter
                                   Assistant United States Attorney
                                   Bar Association # 682921 (MA)
                                   53 Pleasant St., 4th Floor
                                   Concord, NH 03301
                                   Matthew.Hunter@usdoj.gov

The pro se defendant, John L. Allen, Esq., certifies that he has read this 19-page Plea Agreement and that he fully understands and accepts its terms.

Date: September 24 2020         _____
                                John L. Allen, Esq., Pro Se, Defendant

- 19 -